O’BRIEN, Circuit Judge,
dissenting.
Aggravated facts (recited in the majority opinion) cry out for revocation of Tsosie’s supervised release. His recalcitrant behavior, along with all it portends, fully justifies ignoring policy guidance, which suggests re-incarceration for a term between three and nine months. USSG § 7B1.4(a). On these facts imprisonment for eighteen months is well within elastic limits.[1] However, the enlarged term of imprisonment was imposed, not because of Tsosie’s flagrant and repeated disregard of the terms of supervised release, but, in the judge’s words, “only ” because of his need for intensive (long term) alcohol treatment. That approach is not lawful. Accordingly, but with utmost respect for my colleagues, I dissent.
In the “evolving”[2] area of supervised release the guidelines provide “policy statements only.” USSG, Ch.7, Pt. A(l). They are not binding on a district judge, whose decision we accord great deference, requiring, quite generally, that it be “reasoned and reasonable,” United States v. White, 244 F.3d 1199, 1204 (10th Cir.2001). It must also be lawful. 18 U.S.C. § 3742(e). To my lights the statutes and guidelines clearly prohibit an enlargement of a term of imprisonment merely to accommodate a defendant’s need for rehabilitation.
Congressional intent is more than evident; it is nearly palpable. In addressing a sentence of imprisonment, 18 U.S.C. § 3582(a) states in relevant part:
The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the' term, shall consider the factors set forth in *1220 section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.
(Emphasis added.) 28 U.S.C. § 994(k) continues the theme by instructing the United States Sentencing Commission to “insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.” Even a tin ear can discern the leitmotif— defendant rehabilitation, treatment or care cannot drive the incarceration decision either at the threshold or as to length.
The majority acknowledges the statutory limit on judicial discretion when an original sentence of imprisonment is imposed. Majority Op. at 1214. See also, e.g., United States v. Brown, 224 F.3d 1237, 1240 (11th Cir.2000); United States v. Jackson, 70 F.3d 874, 879 (Gth Cir.1995). But, for reasons I cannot follow or fathom, it abandons this acknowledged limit for revocations of supervised release. In doing so it ignores overarching congressional policy, forcefully and repeatedly stated.[3]
The tipping point is whether incarceration is appropriate, not when it is ordered. In authorizing, sometimes requiring, supervised release after imprisonment, 18 U.S.C. § 3583(c) instructs the sentencing judge to consider 18 U.S.C. § 3553(a) factors. Among those factors is “the need for the sentence imposed ... to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....” 18 U.S.C. § 3553(a)(2)(D). But supervised release is not, by definition or in effect, incarceration; a fortiori, the incarceration limits of 18 U.S.C. § 3582(a) *1221 and 28 U.S.C. § 994(k) are not implicated. But those limits may be implicated when a defendant fails to take advantage of the rehabilitative features of supervised release.
A decision to terminate, modify, extend, or revoke supervised release is also tempered by a consideration of some of the § 3553(a) sentencing factors, but in a much more structured manner than the majority suggests. 18 U.S.C. § 3583(e) provides: “Modification of conditions or revocation. — The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), ...” address supervised release. Depending upon circumstances it can: (1) terminate supervised release, (2) extend the term of supervised release, (3) revoke a term of supervised release, or (4) impose house arrest and require electronic monitoring. 18 U.S.C. §§ 3583(e)(l)-(4). The court must consider the enumerated § 3553(a) factors before, and as a guide to, choosing among the four possible consequences, three of which do not involve incarceration. The tipping point does not change; it remains a choice between incarceration (punishment model) and some kind of release (rehabilitation model).
If, in spite of a defendant’s failure to avail himself of the benefits of supervised release, facts suggest a rehabilitation model is still appropriate, one of the sentencing options not involving incarceration would be the choice. On the other hand, if re-incarceration is necessary, the strictures of 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) apply — the availability of prison programs cannot drive the decision to incarcerate or its length.
I see nothing in any of the statutes even remotely suggesting that the incarceration limits contained in § 3582 and § 994 are not global in application. More specifically, there is nothing in the structure or text of 18 U.S.C. § 3583, or in logic, to suggest revocations of supervised release are somehow exempt from those global restrictions. The majority opinion does not square the box.
It tells us: “The rationale for allowing courts to consider rehabilitation when incarcerating a defendant upon violation of the conditions of his supervised release is ‘especially compelling,’ Giddings, 37 F.3d at 1096, because the judge is merely altering the location of the defendant’s supervised release from outside prison to inside prison.” Majority Op. at 1216. Relating and explaining that rationale to a client could be a challenge for defense counsel. The conversation might go something like this: “There is good news; your supervised release has been continued. But there is bad news; you will be serving your supervised release in prison.” In puzzling over the logic, a defendant might well ask what kind of device one must look through to conclude that a supervised release must be served behind prison walls.[4] The logical disconnect is repeated at Page 1217 of the Majority Opinion: “he is serving his term of supervised release in prison because he failed to abide by the conditions for serving supervised release outside of prison.” Contrary to the majority’s holding — that supervised release is the same whether served inside or outside prison walls — a revocation of supervised release, perhaps resulting in months or years behind bars, is a sentence of imprisonment. Logic compels. So do the statutes, fairly read.
Clumsy statutory language may contribute to the problem, but it is exacerbated by the majority’s selective emphasis. In *1222 deed, as the majority notes, 18 U.S.C. § 3583(e)(3) permits the court to:
[rjevoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release ... except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation ... more than 2 years in prison if such offense is a class C or D felony....
Majority Op. at 1215 (emphasis in Majority Opinion). The operative phrase is “the term of supervised release authorized by statute for the offense that resulted in such term of supervised release ” (emphasis supplied), not the subset of those words emphasized by the majority. Read in context the phrase, while cumbersome, simply means the maximum amount of time a defendant could be placed on supervised release — in this case a two-year term because the offense that originally resulted in his supervised release was a Class C felony. 18 U.S.C. § 3583(e)(3). Substituting “a two-year term” for the arcane language of the statute does not change its meaning, but makes it easier to read and demonstrates that it is incapable of supporting the anomalous interpretation forced by the majority’s reading. It would permit the court to:
[rjevoke a term of supervised release, and require the defendant to serve in prison all or part of [a two-year term] without credit for time previously served on postrelease supervision, if the court ... finds by a preponderance of the evidence that the defendant violated a condition of supervised release....
18 U.S.C. § 3583(e)(3). And there is more. Subsection (h) of the statute refers to the revocation of supervisory release language of subsection (e) [quoted above], calling it a “term of imprisonment,” not a means of “serving his term of supervised release in prison.”
When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.
18 U.S.C. § 3583(h) (emphasis added). When his supervised release was — quite properly — terminated, Tsosie was subjected to a “term of imprisonment” and that “term of imprisonment” was extended solely for alcohol treatment. The sentence was contrary to law. 18 U.S.C. § 3582(a); 28 U.S.C. § 994(k).
The sentence imposed not only ignored the statutes, but the policy statements of the sentencing guidelines as well. The United States Sentencing Commission deliberately chose to treat a violation resulting from a defendant’s failure to follow the court-imposed conditions of probation or supervised release as a separate wrong— “a breach of trust.” USSG Ch. 7, Pt. A(3)(b). “[TJhe sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense.” Id. The purpose of a sentence of imprisonment imposed upon the revocation of supervised release is no different than the purpose of imprisonment imposed by an original sentence' — to punish inappropriate behavior. The court is not “converting” the location of a term of supervised release *1223 (Majority Op. at 1216), it is revoking supervised release and “imposing] a term of imprisonment ” for breach of trust. USSG Ch. 7, Pt. A(2)(b) (emphasis added).
The different purposes served by imprisonment and supervised release are also relevant to the analysis.[5] “[Ijmprisonment is not an appropriate means of promoting correction or rehabilitation.” 18 U.S.C. § 3682(a). On the other hand, as the Supreme Court has noted, “Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.” United States v. Johnson, 529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). Each aspect of a sentence — imprisonment, probation, supervised release, restitution, fine — serves a distinct purpose. This is not to say there can be no overlap in addressing more than one purpose at the same time. However, to allow the enlargement of a sentence of imprisonment solely[6] for the purpose of rehabilitation results in a judicial revision of congressional purpose found in 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k).
I would reverse and remand for re-sentencing consistent with the statutes.

. “In the case of a Grade C violation that is associated with a high risk of new felonious conduct ... an upward departure may be warranted.” USSG § 7B1.4, comment, (n.3).

. Now in the second decade of study.

. The majority approach is not unlike that of United States v. Giddings, 37 F.3d 1091 (5th Cir.1994), upon which it relies and quotes. Majority Op. at 1214, 1216, 1216, 1217 & 1219. That court said: "The legislative history of the Comprehensive Crime Control Act of 1984 also indicates that the prohibition against considering rehabilitative needs relates to the decision of whether to impose imprisonment, not to the length of the term of imprisonment. [FN 17].” Giddings, 37 F.3d at 1096. The Giddings court was simply wrong in its analysis of legislative history and the impact of that history on the relevant statutes. The full text of footnote 17, as quoted in Giddings, follows:
See S.Rep. No. 225, 98th Cong., 2d Sess. 119 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3302, Subsection (a) specifies, in light of current knowledge, that the judge should recognize, in determining whether to impose a term of imprisonment, "that imprisonment is not an appropriate means of promoting correction and rehabilitation.” This caution concerning the use of rehabilitation as a factor to be considered in imposing sentence is to discourage the employment of a term of imprisonment on the sole ground that a prison has a program that might be of benefit to the prisoner. This does not mean, of course, that if a defendant is to be sentenced to imprisonment for other purposes, the availability of rehabilitative programs should not be an appropriate consideration, for example, in recommending a particular facility. ([EJmphasis supplied.)
The Giddings court erred in two respects. First, legislative history cannot change the plain language of a statute and 18 U.S.C. § 3582(a) speaks not only to the decision to impose incarceration but also to the length of any incarceration imposed. It requires, in either instance, that the sentencing judge recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation.” Second, the court mis-read the language it quotes in footnote 17. The legislative history merely provides that after the incarceration decision is made (and any decision to incarcerate would necessarily include a term) rehabilitative factors can be considered "for example, in recommending a particular facility.” A post-sentencing facility recommendation hardly equates with a determination of the length of the sentence, particularly so in light of clear and contrary statutory language.

. "Would you tell me, please,” said Alice, "what that means?” Lewis Carroll, Through the Looking Glass, 186 (Penguin Books 1998).

. Policy Statement § 7B1.4 instructs on an imprisonment after revocation. Application Notes 2 and 3 of the Commentary are the only provisions to address circumstances where a departure may be appropriate. Neither provision refers to rehabilitation as a basis for the enlargement of a sentence of imprisonment upon revocation. Although the policy statement is advisory rather than mandatory, the omission of rehabilitative considerations for an upward departure is telling.

. I read the statutes to prohibit the incarceration decision or the length of sentence to be substantially influenced by rehabilitative or treatment considerations, but we need not reach that issue since the decision here was made solely for those reasons.